(No. 18523.—

THE VILLAGE OF BROADVIEW, Appellee, *vs.* JOSEPH DIAN-
ISH *et al.* Appellants.

*Opinion filed June 19, 1929.*

300

GALLAGHER, SHULMAN, ABRAMS & HENRY, (MEYER ABRAMS, MAURICE H. DANIELS, and VINCENT G. GALLAGHER, of counsel,) for appellants.

LANGWORTHY, STEVENS, McKEAG & HURLEY, (B. F. LANGWORTHY, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a judgment of confirmation and order for possession of certain real estate in a proceeding instituted by the village of Broadview under the Local Improvement act. The proceeding was instituted for the purpose of straightening, widening and deepening the channel of Addison creek, which extends through said village. The making of the improvement requires the taking of certain lands. The petition set out the parcels of land to be taken and prays that steps be taken to ascertain just compensation for such land and to ascertain the property benefited by the proceeding, the amount of the benefits, and to levy an assessment therefor in accordance with the Local Improvement act.

The village of Broadview is located in Cook county and is a suburb of the city of Chicago. It lies east of the village of Westchester, south of Bellwood and Maywood, west of the Des Plaines river and north of Twenty-second street. It consists of about 1600 acres of land. The west boundary of Broadview is the road known as Puscheck road. This road extends from Harrison street south to Twenty-second street, a distance of one and one-half miles. Addison creek is the natural drainage for approximately 15,000 acres of land, most of which lies north and west of the village of Broadview. The creek enters the village at its west boundary, runs in a southeasterly direction and leaves the village at Twenty-second street. It drains approximately the southeast one-third of the property of the village. Appellants' property lies in that part of the village. At times of heavy rains or spring thaws the present channel of Addison creek is not sufficient to carry off the flow and at such times water covers a wide area of the land. Addi-

son creek flows into Salt creek, which in turn flows into the Des Plaines river. The ordinance calls for the straightening and deepening of Addison creek throughout the channel within the village of Broadview and in a southeasterly direction beyond the village limits to its conjunction with Salt creek, at Twenty-fourth street.

Counsel for appellee have filed in this case a motion to dismiss the appeal, which motion, with suggestions for and against it, was taken with the case.

Counsel for appellants represented nine objectors, including Joseph Dianish, Thomas Ceska and Joseph and Anna Vancura. There also appears as an appellant one Agnes Vancura. The record does not directly explain whether she is the same as Anna Vancura. It discloses that she is the owner of the property involved as block 5 in Mares & White's addition. Anna Vancura is not shown to own any property affected. As there is but one piece of property in that name affected by this improvement, we are of the opinion that there is but one person involved, and that is Agnes Vancura, and will so treat the record.

Counsel for the village base their motion to dismiss on the ground that the appeal bonds were not filed in accordance with the order of the court allowing the appeal, setting out that Joseph Dianish and Thomas Ceska have filed two joint bonds, one from the order of confirmation and the other from the order awarding possession of land taken. One separate bond was by Anna Vancura appealing from the order for possession of land, and one by Agnes Vancura appealing from the judgment of confirmation.

The record shows that on May 25, 1927, judgment was entered in the county court of Cook county confirming the assessment roll and making awards for lands taken; also giving appellee the right to take possession of the lands taken upon payment of the awards or depositing the same with the county treasurer. The record shows, also, that on

the same day the awards for property taken were paid to those objectors who would receive them or deposited with the county treasurer as to others, and an order was then entered giving leave to the petitioner to take possession of the property involved. On the same day the objectors represented by attorneys for appellants moved that the order of the court for possession be stayed pending the appeal to the Supreme Court, which was denied, and the record then recites: "Now further come objectors represented by Gallagher, Shulman, Abrams & Henry, their attorneys, and severally and jointly pray an appeal from the entry of this order to the Supreme Court of Illinois, which joint or several appeal is hereby allowed on the filing of either a joint or several bond in the sum of $500 within twenty days from May 25, 1927, by the respective objectors represented by Gallagher, Shulman, Abrams & Henry, which appeal is hereby allowed." On the same day the following order was also entered, allowing an appeal from the entry of the judgment: "Now come objectors represented by Gallagher, Shulman, Abrams & Henry and object to each and every ruling of the court and to the entry of the judgment, which objections are overruled, and said objectors by their counsel then and there duly excepted. And now further come objectors represented by Gallagher, Shulman, Abrams & Henry, their attorneys, and severally and jointly pray an appeal to the Supreme Court of Illinois, which joint or several appeal is hereby allowed on the filing of a joint bond in the event of a joint appeal in the sum of $500, and on the filing of a bond in the sum of $500 by the respective owners of the parcels of land represented by the firm of Gallagher, Shulman, Abrams & Henry in the event of a several appeal, said bonds to be filed within twenty (20) days and to be approved by the court." The record shows that on the same day a separate bond was filed signed by Anna Vancura, taking an appeal from the order of the court for possession. On that day another separate bond was filed

signed by Agnes Vancura, reciting that it is in an appeal from the judgment of confirmation against her property. On June 3 the joint bond of Thomas Ceska and Joseph Dianish was filed, reciting that they had appealed from the judgment of confirmation and order of taking land from them. On that day also the joint appeal bond of Ceska and Dianish was filed, reciting that they were appealing from the order of possession entered by the court in the case. On June 7 an election to proceed to take the property was filed by the village. These proceedings all appear in a single transcript of record filed in this appeal.

Counsel for appellee base their motion to dismiss this appeal, first, on the ground that appellants did not have a right to take a separate appeal from the order giving possession of their property, and cite section 31 of the Local Improvement act. (Cahill's Stat. 1927, p. 329.) That section provides: "Such order shall not be appealable as a separate order, if the same be entered in time to be made a part of the record on appeal or writ of error from the judgment, or before the cause is taken under advisement upon hearing by the Supreme Court, but may be reviewed upon appeal or writ of error from the judgment."

All orders were entered and appeals taken in time to be made a part of the record on appeal from the judgment of confirmation, and appellants had no right to a separate appeal from the order for possession. An appeal from a judgment of confirmation and condemnation is sufficient to review the order of possession where such order can be called to the attention of this court before submission of the cause. A separate appeal from the order of possession is unauthorized and of no effect. A dismissal of such separate appeal is, however, unnecessary where, as here, bonds are filed on the same day appealing from the judgment and from the order for possession, as they will be treated as one appeal, and the judgment and order for possession will both be reviewed on the one appeal from the judgment.

The second ground urged for dismissal of the appeal is, that nine objectors were allowed joint or several appeals on filing a joint bond in the sum of $500, and on filing a bond in the sum of $500 by the respective objectors in the event of a several appeal; that Thomas Ceska and Joseph Dianish, two of the objectors, filed a joint bond and Agnes Vancura filed a separate bond. Section 95 of the Local Improvement act provides: "Appeals from final judgments or orders of any court made in the proceedings provided for by this act, may be taken to the Supreme Court of this State, in the manner provided by law, by any of the owners or parties interested in lands taken, damaged or assessed therein, and the court may allow such an appeal to be taken jointly, and upon a joint bond, or severally, and upon several bonds, as may be specified in the order allowing the same."

In a local improvement proceeding the judgment of confirmation is against each parcel of land included in the assessment roll. The interests of the objectors in this case were distinct and separate. The right of appeal is statutory. It must therefore be asserted in strict conformity with the statute. The Local Improvement act, recognizing the nature of the interests as distinct, provides for an appeal that may join parties having separate interests or allow an appeal to each. There is no right in parties having separate and distinct interests in a lawsuit to join in an appeal unless expressly authorized by the statute and in strict conformity with the order of the court allowing it. *City of Momence* v. *Kirby,* 315 Ill. 138; *Legro* v. *Ashkum Drainage District,* 297 id. 155; *First Congregational Church* v. *Page,* 255 id. 267; *Lingle* v. *City of Chicago,* 210 id. 600; *Fortune* v. *Gilbert,* 207 id. 235.

If all appealed they might have filed a joint bond. If any number less than all appealed it was necessary for each to file a separate or several bond to comply with the order. (*Legro* v. *Ashkum Drainage District, supra.*) The appeal

bond of Ceska and Dianish does not comply with the order and their appeal must be dismissed. The bond of Anna or Agnes Vancura (treated in this opinion as Agnes) is a several bond, and the motion to dismiss her appeal is denied. We will therefore review the entire record on the appeal of Agnes Vancura, the remaining appellant of record.

Counsel for appellant raise various questions concerning the right of the village to make the improvement and also concerning the proceedings on the trial as to benefits. It is first objected that the ordinance is void in that it provides for an improvement beyond the corporate limits of the village of Broadview. Section 1 of the Local Improvement act of 1897 (Cahill's Stat. 1927, p. 323,) provides: "That the corporate authorities of cities, villages and incorporated towns are hereby vested with the power to make such local improvements as are authorized by law, by special assessment." This authority has been construed to permit the city or village to extend an improvement beyond the village or city limits where necessary to carry out the scope and object of the improvement. (*Callon* v. *City of Jacksonville,* 147 Ill. 113; *Cochran* v. *Village of Park Ridge,* 138 id. 295; *Shreve* v. *Town of Cicero,* 129 id. 226.) In *Canal Comrs.* v. *Village of East Peoria,* 179 Ill. 214, it was held that under clause 30 of section 1 of article 5 of the Cities and Villages act, cities and villages were authorized to deepen and widen streams and ditches or otherwise provide for drains in any portion of the land within the corporate limits by special assessments on the property benefited thereby; that the statute constitutes the city or village acting under it as a drainage district, and gives to the city or village power to extend the drain or sewer beyond the village limits for the purpose of obtaining proper outlet. It was also there held that the general power to alter or change water-courses carries with it, by necessary implication, all powers necessary to make the grant effective and accomplish the result intended; that the village of East

Peoria having the right to construct a drain, it had a right to extend it to the Illinois river. In *Loeffler* v. *City of Chicago*, 246 Ill. 43, the rule is laid down that "local improvements," as used in the constitution, means improvements within and under the control of one municipality. In that case two municipalities joined to put in a sewer. It was held this could not be done, because the improvement contemplated the purchase and improvement of lands not within one town but that the lands in each was assessed to purchase lands and to make improvements in another municipality. In *Harmon* v. *Village of Arthur*, 309 Ill. 95, the ordinance provided for the installation of a sewer within the village and for a distance of about four miles beyond its limits, with a contract on the part of the village that it would deepen and widen the ditch of a drainage district with which the sewer was to be connected. It was held that the improvement proposed was not for the exclusive use under the control of the village authorities but that the deepening of the ditches of the drainage district was a benefit to the property within the drainage district, and that therefore special assessments could not be levied against property in the village for the benefit of the drainage district. There is nothing in this record tending to indicate that the widening of the creek outside the village limits is not for the sole benefit of the village or not under its exclusive control. The evidence does disclose that to widen Addison creek merely within the village and without an adequate outlet would not in times of high water relieve the property of the village from overflow. We are of the opinion, therefore, that in this case the village has power to widen Addison creek to its conjunction with Salt creek, and this objection cannot be sustained.

It is next objected that in this case the property condemned was to be taken not for public but for a private use, or for a public and private use, which the village had no right to do. To sustain this proposition appellant points

to the provision in the ordinance that the owners and occupants of lands within the district described therein shall have the right to connect their drains with the channel when widened, and argues that such is a private use. That fact, however, does not render the proceedings to condemn property a condemnation for private use, but the right to connect with the improvement when made is prerequisite to the right to assess non-abutting property. (*City of Chicago* v. *Sullivan Machinery Co.* 269 Ill. 58.) It is an incident to all local improvements that private property will be benefited. Sections 12 to 33 of the Local Improvement act specifically authorize condemnation of property where necessary for a local improvement, and the fact that private property may be benefited by such improvement or that private benefit may accrue thereon does not prevent the application of the statute.

Counsel for appellant cite *Gaylord* v. *Sanitary District*, 204 Ill. 576, and other cases, as authority for their position that the village does not have a right to condemn property in this case. These are eminent domain cases, and lay down the rule that authority to condemn private property for public use does not justify the taking of such property for public and also private use. These were filed under the Eminent Domain statute and are not applicable here, as the Local Improvement act specifically authorizes the taking of private property for a local improvement where necessary.

It is next contended that the ordinance is void in that it attempts to establish a drainage district not in conformity with the statute pertaining to such districts. In *Duane* v. *City of Chicago,* 198 Ill. 471, and *Gray* v. *Town of Cicero,* 177 id. 459, this court has held that a local improvement act furnishes abundant authority for constituting the village a drainage district for the purposes of the improvement. It is not the purpose of the act to create a district, as is provided under the Drainage act. By clause 30 of section 1, article 5, of the Cities and Villages act, (Cahill's

Stat. 1927, p. 313,) cities and villages are authorized "to deepen, widen, dock, cover, wall, alter or change channel of water-courses." The fact that the ordinance provided that the assessments or benefits should be spread over a certain district does not require that the improvement proceed under the drainage acts of the State. The term "drainage district" is used in the ordinance, but what is, in fact, designated is a taxing district comprising the lands benefited by the improvement. The ordinance is not open to this objection.

It is next contended that the petition in this cause was insufficient for the reason that it did not affirmatively show that the property sought to be condemned is necessary for the public use, and counsel cite in support of this contention *Northwest Park District* v. *Hedenberg,* 267 Ill. 588. That was a proceeding under the Eminent Domain act and is not applicable here. Sections 13 and 14 of the Local Improvement act (Cahill's Stat. 1927, p. 326,) specify the requirements of the petition in those cases where condemnation of private property is necessary to the improvement. These requirements are, that the petition be filed by some officer named by the city praying that steps be taken to ascertain just compensation to be paid for private property taken for the improvement, that the petition describe the property to be taken or damaged, and that there shall be filed with the petition a copy of the ordinance on which it is based. There is nothing in the act requiring that the petition show that the taking of private property for the improvement is necessary for the public use. In a proceeding under the Local Improvement act it is not necessary to show that the property sought to be condemned is necessary for the public use. That is a legislative question and is decided by the passage of the ordinance upon which the petition is based, and courts will not inquire into that question. *City of Paris* v. *Cairo, Vincennes and Chicago Railway Co.* 248 Ill.

213; *Chicago and Northwestern Railway Co.* v. *City of Morrison,* 195 id. 271; *Chicago and Alton Railroad Co.* v. *City of Pontiac,* 169 id. 155.

Appellant also contends that the petition should have alleged that the village of Broadview was incorporated. This is a matter of which courts will take judicial notice. *City of Rock Island* v. *Cuinely,* 126 Ill. 408.

It is also objected to the sufficiency of the petition that it shows that the proposed improvement extends beyond the limits of the village. This objection has been considered in the discussion of the specific contention of want of power in the village to make this improvement and need not be further considered here.

It is next urged that the assessment roll was not properly verified. It appears that the body of the certificate of the commissioners pertaining to the assessment roll does not contain the names of all of the commissioners, but of one, only. This was clearly an error of the scrivener. The certificate is signed and sworn to by all of the commissioners, and this objection is without merit. The certificate was the certificate of all of the commissioners.

It is also objected that the commissioners did not comply with the law, in that the record shows that their appointment, qualification and report were all made and done simultaneously, and that section 14, requiring investigation and report by the commissioners, was not complied with. The fact that the appointment and qualification of the commissioners appear of record as of the same day as does their report does not suggest that they had not made an investigation. They might well have done so, prepared a report and filed it on the same day of their appointment. There is no evidence that they did not, and dereliction in duty is not to be presumed. No reason is shown why their investigation was not sufficient to enable them to make the report.

The foregoing points discussed are the legal objections raised. We are of the opinion that the court did not err in overruling them.

It is next urged as a procedural objection on the hearing as to benefits, that the court erred in permitting certain of the expert witnesses called by appellee to refer to their memoranda and to read from the same in giving their testimony as to the value of land to be taken and as to benefits. The rule is that a memorandum may be handed to a witness for the purpose of refreshing his recollection, and that he may thereafter testify to the facts from his recollection but he is not to read from the copy. (*Dorrance* v. *Dearborn Power Co.* 233 Ill. 354; *Bonnet* v. *Glattfeldt,* 120 id. 166; *Elston* v. *Kennicott,* 46 id. 187.) It appears from the record that the witnesses testifying stated that they made figures on maps furnished by counsel for appellant, which figures gave the amounts which in their opinions were the values of the property taken or affected. The rule was applied in the cases cited to entries made in records or books of account, and appellee contends that opinion evidence is not to be placed in the same category; that where the witness states that he made the figures on maps, which are not questioned, the reason for the rule does not apply. The record shows that there were a number of pieces of property concerning which these witnesses testified. The avowed purpose of the use by the witness of maps with figures placed thereon by the witness was to refresh his recollection. It might well be that the witness could not remember from the legal description of the property or from an examination of a plat the location and character of each tract and therefore would be unable to remember the opinion he had formed of the value of each tract. There does not appear to have been any cross-examination to test his memory as to those tracts. The evidence was purely of an opinion, and the fact that the witnesses used the maps and their figures thereon to re-

fresh their recollection did not tend to make their evidence other than opinion evidence. That testimony was not used to make proof of the correctness of an instrument, as the maps were not offered in evidence. We are of the opinion that the record does not show violation of the rule· here quoted.

It is claimed that the judgment is void because the order of the court varied the proposed improvement from the one established by the ordinance. An examination of the record shows that the order recites that the Forest Preserve District of Cook county, which owns land outside the village across which the improvement extends, had requested the petitioner to vary the course of the improvement across its property; that such change in the course of the creek would shorten the improvement and substantially lessen the cost thereof and tend to increase the efficiency of the creek as an outlet. The court finds that such change is for the interest and benefit of all property assessed and that petitioner has consented to acquiesce in the request of the Forest Preserve District. The order, however, while approving the accompanying change in the assessment roll proposed by the agreement between petitioner and the Forest Preserve District, makes no change as to the line of the improvement from the ordinance but approves and orders the improvement in accordance with the ordinance. There is not, therefore, shown by the record any change in the location of the improvement. If there is a substantial deviation in the construction of the improvement from the ordinance, appellant has an adequate remedy, under section 84 of the Local Improvement act, upon consideration of the certificate of final cost and completion, when the court may determine whether there has been a substantial compliance with the ordinance.

It is also objected that the court erred in striking out the testimony of appellant, who is owner of block 5, and who testified that she had, five months prior to the hear-

ing, purchased the same and paid therefor the sum of $20,000, paying $5000 in cash and the balance by mortgage. Appellee contends that the measure of compensation for land sought to be taken for this improvement is the fair cash market value of the land at its highest and best use; that the market value of the property is not the value to the owner or purchaser but the value on the market, where it is not devoted to a special use. *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 286 Ill. 213, and *City of Chicago* v. *Lord,* 276 id. 544, cited by appellee, so state the rule as to the measure of compensation to be paid for lands taken, but it cannot be said that because of this rule evidence of sales in which part, only, of the purchase price has been paid while the balance is represented by a mortgage, is not competent. As was said in *Dady* v. *Condit,* 209 Ill. 488, and in *Sanitary District* v. *Corneau,* 257 id. 93, evidence of this character tends to furnish some evidence to the jury of land values, and where the land has been purchased by the objector shortly before the condemnation proceedings were instituted, the purchase price will afford some evidence of its present fair cash market value. In this case the witness Rudolph Mares testified to a cash sale of block 5 at $20,000 and placed the value of block 5 at $7500 per acre. The record shows that block 5 contains approximately five acres. J. L. Tupey, witness for appellant, testified that block 5 was worth $7500 to $8000 per acre, while two other witnesses placed the value at $12,000 and $13,500 per acre. Appellee's evidence as to the value of this property varied from $900 to $1250 per acre. While it was error to exclude the testimony of appellant, we are of the opinion that since she had the benefit of that specific evidence by another witness in addition to the testimony of several other witnesses as to value, this court would not be justified in reversing this cause and remanding this record for a re-trial on account of this error. The evidence of appellant was but cumulative, and unless this court can

see that a re-trial with that evidence in the record might make a material difference in the amount allowed for the land taken, we would not be justified in returning this record for a re-trial. Appellant's land taken by the improvement amounts to 54/100 of an acre. For this the jury awarded her the sum of $800. The verdict was within the range of the evidence. We are unable to see that her evidence might make a material change in this verdict, and are of the opinion that this judgment should not be reversed for this error.

It is also contended that the court erred in giving the first instruction on behalf of appellee. This instruction is as follows:

"The court instructs the jury that where tracts of land adjoining each other are so situated that water falling or collecting by melting snow or the like, upon one, naturally descends upon the other, it must be suffered by the owner of the lower tract to be discharged upon his land, for the owner of the upper tract in such case has a natural easement as it is called, to have the water that gathers on his land flow off on the field below."

It is contended that while this is a sound proposition of law applicable in a proceeding between the owners of two parcels of land, it has no application to a condemnation proceeding. In this case one of the issues was as to the value of the property taken and whether the proposed improvement was imposing a burden upon the property involved to carry off the water which came from above, and for that reason the instruction was pertinent to the issues involved.

It is also urged that the court erred in refusing appellant's twentieth instruction. This instruction is as follows:

"The court instructs the jury that in considering the measure of damages for the taking of the property of blocks 4, 5 and 6 in Mares & White subdivision, you may take into consideration the effect flowing from the proposed improvement on the particular property and if you are of

the opinion that the proposed improvement will cause the property owned by the owners of blocks 4, 5 and 6 to be subject to unhealthy and unsanitary conditions by reason of the fact that the ditch will be open and causing mosquitoes to be gathered, depreciating the use of the property for residential purposes, then you are at liberty to take these elements into consideration in awarding your damages to the respective owners."

It is argued that this instruction is proper because there was evidence in the record with reference to the depreciation of the property for residential purposes and the instruction tended to assist the jury to fix the value of the property taken. The record, however, is that Addison creek is already an open creek. The proceedings here involved are to straighten, widen and deepen the channel. There is no evidence, nor can it be seen in the nature of this improvement, that widening and deepening a stream already an open stream would tend to cause unhealthy and unsanitary conditions that do not already exist.

It is also objected that the order of possession made subsequent to the approval of the appeal bond in this case was illegal. The order for possession was entered on the day of the entry of the final judgment. Appeal having been taken from the judgment of confirmation and order of possession, the order of possession is stayed with the judgment. In *Village of Bellwood* v. *Galt,* 326 Ill. 55, cited by appellant in support of her point, the order for possession was entered after a lapse of considerable time following the entry of the general order of confirmation and judgment of condemnation and an appeal therefrom, and a separate appeal was taken from such order. Since the appeal in this case stays the order for possession, no harm can come to appellant by reason of such order.

It is also objected that sections 30 and 31 of the Local Improvement act are invalid as depriving the objectors of their property without due process of law. By these sec-

tions it is provided that the petitioner upon deposit of the award may take the property involved for the improvement regardless of an appeal from the final order of condemnation. Section 31 provides that an order for possession shall not be appealable as a separate order if the same be entered in time to be made a part of the record on appeal or writ of error from the judgment but may be reviewed upon the appeal or writ of error from the judgment. Since the appeal in this case stays the order of possession as well as the final judgment, it follows that the objector cannot be deprived of his property prior to a hearing of the entire cause on appeal. Having then had their day in court under established rules of procedure, it follows that appellant's property is not taken without due process of law.

There being no reversible error in the record the judgment and order for possession are affirmed.

*Judgment and order affirmed.*